No. 23-12178

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

Jeremy Jones,
*Appellant*,

v.

David Ceinski, Jr.
*Appellee.*

On Appeal from the United States District Court
for the Middle District of Florida, Case No. 8:22-cv-231

## BRIEF OF PLAINTIFF-APPELLANT

JANAI S. NELSON
    *Director-Counsel*
SAMUEL SPITAL
ARIELLE HUMPHRIES
ASHOK CHANDRAN
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200

CHRISTOPHER E. KEMMITT
MOLLY M. CAIN
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street NW, Ste. 600
Washington, DC 20005
(202) 682-1300

DAVID WILLIAM SMITH
LAW OFFICE OF DAVID W. SMITH
5020 Clark Rd., #412
Sarasota, FL 34233
(941) 312-3078

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and the Eleventh Circuit Rule 26.1-1, the NAACP Legal Defense and Educational Fund, Inc. and the Law Office of David W. Smith state that they have no parent corporations, nor have they issued shares or debt securities to the public. The organizations are not subsidiaries or affiliates of any publicly owned corporation, and no publicly held corporation holds ten percent of their stock. They hereby certify that the following is a complete list of interested persons:

1. Aleksandr Boskard, *Counsel for Defendant-Appellee*

2. Amanda Arnold Sansone, Hon., *Magistrate Judge*

3. Arielle Humphries, *Counsel for Plaintiff-Appellant*

4. Ashok Chandran, *Counsel for Plaintiff-Appellant*

5. Christopher E. Kemmitt, *Counsel for Plaintiff-Appellant*

6. City Attorney's Office of Miami Beach, *Counsel for the Defendant-Appellee*

7. David Ceinski, *Defendant-Appellee*

8. David William Smith, *Counsel for Plaintiff-Appellant*

9. Janai S. Nelson, *Counsel for Plaintiff-Appellant*

10. Jeremy Jones, *Plaintiff-Appellant*

11. Joshua B. Moye, *County Attorney*

12. Kurt A. Joffman, *Sheriff of Sarasota County*

13. Molly M. Cain, *Counsel for Plaintiff-Appellant*

14. NAACP Legal Defense & Educational Fund, Inc. ("LDF"), *Counsel for the Plaintiff-Appellant*

15. Samuel Spital, *Counsel for Plaintiff-Appellant*

16. Sarasota County, *Interested Association of Persons*

17. Scott Thomas Bossard, *Counsel for Defendant-Appellee*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Given the lengthy history and fact-specific issues regarding Fourth Amendment rights, Plaintiff-Appellant Jeremy Jones respectfully requests the case be set for oral argument.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ...............................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................... i

TABLE OF CONTENTS................................................................... ii

TABLE OF AUTHORITIES ............................................................. iv

INTRODUCTION ...........................................................................1

STATEMENT OF JURISDICTION....................................................4

STATEMENT OF ISSUES PRESENTED............................................4

STATEMENT OF THE CASE............................................................5

    A.    Factual Background ........................................................ 5

    B.    Procedural History........................................................ 8

SUMMARY OF THE ARGUMENT ..................................................10

STANDARD OF REVIEW ..............................................................11

ARGUMENT ................................................................................12

    I.    Officer Ceinski Violated the Fourth Amendment by Using Excessive
        Force Against Mr. Jones. ...............................................12

        A.    The First *Graham* Factor Favors Mr. Jones Because He Was Stopped
            for a Minor Traffic Violation.......................................13

        B.    The Second *Graham* Factor Favors Mr. Jones Because He Did Not
            Pose an Immediate Threat to Officer Ceinski's Safety. ........13

        C.    The Third *Graham* Factor Favors Mr. Jones Because He Did Not
            Resist Arrest or Attempt to Flee....................................16

        D.    The District Court Erred in Holding that Officer Ceinski Used De
            Minimis Force Because Mr. Jones Suffered Only Minor Injuries. .....18

1. The District Court's Determination that Mr. Jones's Injuries Were Minor Misapplied the Summary Judgment Standard and is Legally Irrelevant…………………………………………………………..18

2. The District Court Misapplied the Summary Judgment Standard and Relied on Inapposite Cases to Find Officer Ceinski's Force was De Minimis…………………………………………………………….20

II.    Officer Ceinski Violated Mr. Jones's Clearly Established Constitutional Right.................................................................................................23

    A.    Binding, Materially Similar Precedent Clearly Establishes That Punching and Choking a Nonresistant Individual Violates the Fourth Amendment………………………………………………...............24

    B.    *Graham v. Connor* Clearly Establishes that Officer Ceinski Used Excessive Force.............................................................................27

CONCLUSION........................................................................................29

CERTIFICATE OF COMPLIANCE.......................................................31

CERTIFICATE OF SERVICE ...............................................................32

# <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u> <u>**Pages(s)**</u>

*Baxter v. Roberts*,
    54 F.4th 1241 (11th Cir. 2022)…………………………………………...…17

*Bolt v. Losa*,
    No. 09-60963-CV, 2010 WL 5538720 (S.D. Fla. Dec. 6, 2010)…………..17

*Brooks v. Miller*,
    78 F.4th 1267 (11th Cir. 2023)………………………………………………..27

*Burton v. Tampa Hous. Auth.,*
    271 F.3d 1274 (11th Cir. 2001)……………………………………………11

*Cantu v. City of Dothan,*
    974 F.3d 1217 (11th Cir. 2020)……………………………………………23

*Edwards v. Monmany,*
    No. 2:19-cv-711-SPC-NPM, 2023 WL 145011 (M.D. Fla. Jan. 10,
2023)……………………………………………………………………………17

*Fils v. City of Aventura,*
    647 F.3d 1272 (11th Cir. 2011)……………………………………………29

*Glasscox v. City of Argo,*
    903 F.3d 1207 (11th Cir. 2018)……………………………………………23

*Graham v. Connor,*
    490 U.S. 386 (1989)……………………………………………………8, 12

*Hadley v. Gutierrez,*
    526 F.3d 1324 (11th Cir. 2008)……………………………….....21, 27, 32

*Hoyt v. Cooks,*
    672 F.3d 972 (11th Cir. 2012)……………………………………………..28

*Jay v. Hendershott,*
    579 F. App'x 948 (11th Cir. 2014)…………………………………………28

*Landsman v. City of Vero Beach,*
    621 F. App'x 559 (11th Cir. 2015)…………………………………………28

*Lee v. Ferraro,*
284 F.3d 1188 (11th Cir. 2002)………………………………………..passim

*Mercado v. City of Orlando,*
407 F.3d 1152 (11th Cir. 2005)………………………………………...14, 26

*Moore v. Gwinnett Cnty.,*
967 F.2d 1495 (11th Cir. 1992)……………………………………………….17

*Nolin v. Isbell,*
207 F.3d 1253 (11th Cir. 2000)………………………………………...12, 22

*Perez v. Susczynski,*
809 F.3d 1213 (11th Cir. 2016)………….....................................................15

*Perez v. Wicker,*
No. 2:14-CV-558-FTM-29CM, 2016 WL 3543502 (M.D. Fla. June 29, 2016)……………………………………………………………………………22

*Pickens v. Toney,*
No. 521CV00610ACAHNJ, 2023 WL 5487389 (N.D. Ala. July 31, 2023)
………………………………………………………………………………...21

*Pruitt v. City of Montgomery,*
771 F.2d 1475 (11th Cir. 1985)………………………………………………21

*Saunders v. Duke,*
766 F.3d 1262 (11th Cir. 2014)………………………………………...25, 27

*Sconiers v. Lockhart,*
946 F.3d 1256 (11th Cir. 2020)………………………………………………11

*Sebastian v. Ortiz,*
918 F.3d 1301  (11th Cir. 2019)………………………………14, 26, 27

*Smith v. Mattox,*
127 F.3d 1416 (11th Cir. 1997)………………………………………………19

*Stephens v. DeGiovanni,*
852 F.3d 1298 (11th Cir. 2017)……………………………………16, 25, 28

*Sutton v. Wal-Mart Stores East, LP,*
64 F.4th 1166 (11th Cir. 2023)……………………………………………..12

v

*Taylor v. Taylor,*
        649 F. App'x 737 (11th Cir. 2016)…………………………………………22

*Tolan v. Cotton,*
        572 U.S. 650 (2014)………………………………………………………..23

*Toth v. City of Dothan,*
        953 F. Supp. 1502 (M.D. Ala. 1996)………………………………………21

*West v. Davis,*
        767 F.3d 1063 (11th Cir. 2014)……………………………………………19

*Winterrowd v. Nelson,*
        480 F. 3d 1181 (9th Cir. 2007)……………………………………………..15

*Woodruff v. City of Trussville,*
        434 F. App'x 852 (11th Cir. 2011)…………………………………………22

## Statutes

28 U.S.C. § 1291……………………………………………………………...4

28 U.S.C. § 1331……………………………………………………………...4

42 U.S.C. § 1983……………………………………………………………..4, 8

## **INTRODUCTION**

During a stop for a minor traffic violation on August 8, 2020, Defendant-Appellee Officer David Ceinski, Jr. placed Plaintiff-Appellant Jeremy Jones, an African American man with a physical disability, in a chokehold and wrist lock, then punched him in the head while calling him a "handicapped n----." At the time Officer Ceinski used this force, Mr. Jones was standing outside his vehicle, was not aggressive or threatening towards Officer Ceinski in any way and had made no attempts to flee or resist. He complied fully with all of Officer Ceinski's commands. But because Mr. Jones informed Officer Ceinski that he was lawfully carrying a licensed firearm in his vehicle, Officer Ceinski claimed he was justified in choking Mr. Jones to the point that Mr. Jones could not breathe, then punching him in the head. As a result of this assault, Mr. Jones was treated for neck and rib pain, sustained a possible wrist fracture, suffered an umbilical hernia, and has experienced lasting emotional damage.

Officer Ceinski's use of force was unreasonable and excessive under clearly established Fourth Amendment law. It is undisputed that Officer Ceinski stopped Mr. Jones for a minor traffic violation. Even Officer Ceinski agrees that he did not use violent force against Mr. Jones because of the traffic violation that precipitated the stop or any specific actions by Mr. Jones.  His sole explanation for this excessive force was that Mr. Jones lawfully possessed a gun. But it was clearly unreasonable

1

for Officer Ceinski to use a chokehold, wrist lock, and punch to the head under these circumstances, when Mr. Jones stood outside the car, did not reach for the weapon, did not attempt to flee, complied with all commands, and, indeed, readily informed Officer Ceinski of the presence of the weapon in the car.

The District Court,[1] however, erroneously granted Officer Ceinski's summary judgment motion, holding that his force was reasonable, and he was entitled to qualified immunity. In reaching this conclusion, the District Court made three significant errors.

*First*, the District Court failed to properly analyze and weigh all elements of an excessive force claim, resting its decision solely on a finding that Mr. Jones posed a threat merely because he lawfully possessed a firearm in his car—even absent any evidence that Mr. Jones had attempted to access or use the weapon in any way. But, recognizing the constitutional right of lawful gun ownership, this Court's clear precedent requires a fact-specific assessment of how a weapon is being used to determine whether an individual is actually posing a threat, as opposed to simply exercising a constitutional right.

---

[1] The parties consented to proceed before a magistrate judge on April 12, 2022, and the case was reassigned to the magistrate judge the following day. *See* Doc. Nos. 13, 14. Mr. Jones uses "District Court" to refer to the magistrate judge throughout this memorandum.

2

*Second*, the District Court failed to apply controlling precedent with respect to both the summary judgment standard and the reasonableness of force by finding that Officer Ceinski's use of force was de minimis. The District Court omitted relevant facts that, at minimum, create a genuine dispute about the amount of force used, adopting Officer Ceinski's characterization of the chokehold as a "grab[] around the neck" and assertion that Mr. Jones suffered only minimal injuries. But the summary judgment standard requires the facts and inferences to be taken in the light most favorable to Mr. Jones, and this Court has repeatedly found the injuries Mr. Jones sustained to be significant. Moreover, Officer Ceinski's chokehold and punching do not become de minimis just because Mr. Jones was fortunate enough not to suffer even more severe physical harm.

*Third*, the District Court erred by holding that Officer Ceinski's actions did not violate clearly established law. For decades, the Eleventh Circuit has consistently held that use of force against an individual who is non-threatening and not resisting or attempting to flee violates the Fourth Amendment. Mr. Jones followed all commands, did not resist, and did not attempt to flee. But the District Court found the force was reasonable solely because Mr. Jones lawfully possessed a gun in his vehicle while he stood outside it. That determination contravenes clear law from this Court denying qualified immunity to officers who use significant force on individuals solely because they possess a lawful, permitted gun.

3

The District Court's grant of summary judgment should be reversed, and this case should be remanded for trial.

## STATEMENT OF JURISDICTION

The District Court properly exercised jurisdiction over Mr. Jones's federal claim pursuant to 28 U.S.C. § 1331, as that claim arises under 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution. In an opinion and order dated May 30, 2023, the District Court entered summary judgment in favor of Officer Ceinski. The District Court entered a final judgment, over which this Court has jurisdiction pursuant to 28 U.S.C. § 1291, on June 1, 2023. Mr. Jones timely filed a notice of appeal on June 29, 2023, properly invoking this Court's jurisdiction.

## STATEMENT OF ISSUES PRESENTED

1.      Did the District Court err by holding, as a matter of law, that Mr. Jones posed a threat because he disclosed his concealed carry permit and the presence of a gun in the car, even though Mr. Jones stood outside the car, made no attempts to reach for the gun, and obeyed commands?

2.      Did the District Court err by holding, as a matter of law, that a chokehold, wrist lock, and punch in the head constitute de minimis force?

3.      Was it clearly established on August 8, 2020, that an officer violates the Fourth Amendment by putting a physically disabled man in a chokehold, wrist

lock and punching him on the head, when the man was stopped for a minor traffic violation, posed no threat, obeyed commands, and was not resisting?

## STATEMENT OF THE CASE

### A. FACTUAL BACKGROUND[2]

Jeremy Jones is an African American man who was born with severe osteoporosis. Doc. 49 at 1.[3] "As a result of [his] birth defect, [his] hands and feet are in a permanent flexed position." *Id.* With his physical disability, "[o]rdinary hand tasks, such as using a pen, operating a phone, or opening a car do[or] . . . take[] [him] much longer than someone without [his] handicap." *Id.*

On August 8, 2020, Mr. Jones was driving to pick up food with his godbrother, John Thomas, in the passenger seat. Doc. 49 at 1, Doc. 41 9–10. While parked at an intersection, Officer Ceinski, saw Mr. Jones pull up to a red light. Doc. 50 at 11. Officer Ceinski observed that, while stopped at the light, the passenger side door of Mr. Jones's car opened, and a passenger leaned out briefly. *Id.* at 11–12.

When the light turned green, Mr. Jones proceeded left at the intersection and made an immediate left turn into the parking lot of a restaurant. Doc. 42 at 6–7; Doc. 49 at 1. Officer Ceinski testified that, as he drove, Mr. Jones "w[as]n't going very

---

[2] Because this appeal arises from Officer Ceinski's motion for summary judgment, this Court must "view the evidence and all factual inferences therefrom in the light most favorable to [Mr. Jones], and resolve all reasonable doubts in [his] favor . . . ." *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).

[3] References to District Court filings are cited as "Doc. __".

fast" and "w[as]n't exceeding a speed limit." Doc. 50 at 17. Once the car entered the parking lot, Officer Ceinski observed the car door close. Doc. 50 at 15–16. Officer Ceinski activated his overhead lights and followed Mr. Jones into the parking lot. Doc. 50 at 17–18. Mr. Jones testified that saw the overhead lights behind him as he parked the car. Doc. 49 at 1.

Mr. Jones testified that he remained in the vehicle as Officer Ceinski approached the driver's side door. Doc. 49 at 2. Officer Ceinski asked Mr. Jones to step out of the car, and Mr. Jones complied, stepping out and to the front of his vehicle as instructed. Doc. 49 at 2; Doc. 41 at 3, 10. Once Mr. Jones was towards the front of the car, Officer Ceinski asked Mr. Jones for his license and registration. Doc. 41 at 11. Again, Mr. Jones complied, additionally providing his concealed carry permit from his wallet. *Id.* at 12, 32; Doc. 49 at 2. Officer Ceinski asked if Mr. Jones had a weapon, and Mr. Jones informed him that he did in the car. Doc. 49 at 2; Doc. 41 at 14. Mr. Jones testified that he did not reach back towards his car or towards his firearm. Doc. 41 at 12; Doc. 49 at 2.

Once Officer Ceinski learned there was a weapon in the car, he "proceeded to get aggressive with [Mr. Jones] by grabbing [his] wrist, twisting [his] arm, pushing [him] against the car and placing [him] in a chokehold." Doc. 49 at 2; *see also* Doc. 49-3; Doc. 41 at 14. Officer Ceinski "slammed" Mr. Jones into the car, Doc. 41 at 28, then "continued to choke [Mr. Jones] to the point that [he] was unable to

6

breathe." Doc. 49 at 2; Doc. 41 at 4. Then, Officer Ceinski "proceed[ed] to punch [Mr. Jones] on top of the head with a closed fist while continuing to hold [him] in a chokehold." Doc. 49 at 2; Doc. 41 at 24–25. During this encounter, Mr. Jones tried to tell Officer Ceinski he was "handicapped," because his "birth defect makes [him] very susceptible to broken bones." Doc. 49 at 2. Officer Ceinski acknowledged hearing Mr. Jones mention his handicap. Doc. 50 at 45.

Officer Ceinski repeatedly called Mr. Jones a "handicapped n----" during the encounter. Doc. 49 at 2; *see also* Doc. 49-3. Mr. Jones's godbrother, Mr. Thomas, exited the car and screamed at Officer Ceinski about Mr. Jones's disability and to stop choking him. Doc. 49 at 2. "Officer Ceinski aggressively yelled back at [the passenger] to 'Back up n---- or I'll kill you.'" Doc. 49 at 3. At one point during the use of force, Officer Ceinski said to Mr. Thomas, "[a]fter I get done beating your handicapped brother, I'm going to beat you next." Doc. 41 at 17.

Officer Ceinski admitted that Mr. Jones "didn't physically resist." Doc. 50 at 45. Officer Ceinski testified that Mr. Jones "verbally resisted" by saying "You can't touch me" and mentioning his handicap. *Id.* Mr. Jones testified that he did not at any point reach for a weapon or hold anything in his hands other than his wallet and license. Doc. 49 at 2.

When backup officers arrived, Mr. Jones asked for medical assistance because he was having "difficulty breathing and pain in the ribs." *Id.* at 3. One of the

lieutenants who responded to the scene apologized to Mr. Jones and emphasized that he "wasn't the one that choked [Mr. Jones]." Doc. 41 at 20. Mr. Jones was taken by stretcher to Sarasota Memorial Hospital. Doc. 49 at 3. As Mr. Jones was being loaded onto the stretcher, he heard Officer Ceinski say "It's nothing wrong with the handicapped n-----. He faking." Doc. 41 at 20. At Sarasota Memorial Hospital, Mr. Jones was evaluated for a "head contusion, neck pain, rib pai[n] and possible wrist fracture." Doc. 49 at 3. The incident caused an umbilical hernia, *id*., and lasting emotional consequences, Doc. 41 at 4–5 ("So now ever since th[e force] happened to me I have nightmares. It's hard for me to sleep at night. I'm scared to drive by myself . . . .").

Mr. Jones received a citation for opening a door into moving traffic, but was subsequently found not guilty on April 6, 2022. Doc. 49-4.

## B. PROCEDURAL HISTORY

Mr. Jones filed a complaint against Officer Ceinski under 42 U.S.C. § 1983 on January 22, 2022, alleging that Officer Ceinski violated his right to be free from excessive force under the Fourth Amendment of the United States Constitution. Officer Ceinski moved for summary judgment on March 30, 2023. Doc. 40.

The District Court granted Officer Ceinski's motion for summary judgment on May 30, 2023, holding that Officer Ceinski's conduct was lawful under *Graham v. Connor*, 490 U.S. 386 (1989), which identifies three factors for analyzing

excessive force claims: the severity of the crime being investigated, whether an individual poses an immediate threat, and whether the individual is actively resisting arrest or attempting to attempting to flee. Doc. 53 at 11. In analyzing the first *Graham* factor, the Court acknowledged that Mr. Jones was "was pulled over for a minor traffic violation . . . ." *Id.* at 13. Yet the District Court found that because it was "undisputed a handgun was in the front seat area," the "presence of that weapon" created "an imminent threat of harm," justifying the use of significant force. *Id.* at 12–13. The District Court did not analyze the third *Graham* factor—whether Mr. Jones had resisted arrest or attempted to flee.

Finally, the District Court characterized Mr. Jones's injuries as "minor," and determined that Officer Ceinski's use of force was therefore de minimis, equating the force to a "push or a shove." *Id.* at 13–14. Because an "officer's use of de minimis force to effectuate a lawful arrest does not constitute excessive force," the District Court held, the "undisputed facts demonstrate no excessive force by Deputy Ceinski and thus Deputy Ceinski is entitled to qualified immunity." *Id.* at 13–14. In reaching these conclusions, the District Court did not acknowledge key parts of the summary judgment record, including that Mr. Jones suffered an umbilical hernia; that he was put in a chokehold to the point he could not breathe and punched in the head; and that Officer Ceinski repeatedly used racial slurs against Mr. Jones and his godbrother.

In the alternative, the Court found that Officer Ceinski's use of force did not violate clearly established law, because it did not violate the Fourth Amendment at all. *Id.* at 15.

Mr. Jones filed a timely notice of appeal. Doc. 55.

## SUMMARY OF THE ARGUMENT

The District Court's grant of summary judgment should be reversed because a reasonable trier of fact could conclude that Officer Ceinski used excessive force in violation of the Fourth Amendment when he choked a compliant, non-threatening, non-resistant physically disabled man until he could not breathe, used a wrist lock, and punched his head. The District Court made three errors in reaching the contrary conclusion.

First, the District Court erred because all three *Graham* factors favor Mr. Jones. Regarding the first factor, Mr. Jones was indisputably stopped for a minor traffic violation. The second factor favors Mr. Jones as he did not pose an imminent threat to Officer Ceinski because he complied with all demands; he stood outside of his car, away from the weapon he lawfully possessed and readily disclosed; and he made no effort to get back into the car. Finally, the third factor clearly favors Mr. Jones as he did not attempt to resist or flee. In reaching a contrary conclusion, the District Court failed to properly weigh the *Graham* factors. Instead of looking at the totality of the circumstances, the Court relied solely on the presence of a weapon as

sufficient authority for Officer Ceinski to use any amount of force, which is contrary to this Court's precedent.

Second, viewing the facts in the light most favorable to Mr. Jones, Officer Ceinski's force was much more than de minimis—indeed, a chokehold can be deadly—and Mr. Jones's hernia, wrist pain, and emotional damage were significant injuries. The District Court failed to properly apply the summary judgment standard by omitting materially relevant facts and drawing inferences in Officer Ceinski's favor to find his force was de minimis.

Third, Officer Ceinski's conduct violated clearly established law. Binding, materially similar caselaw going back decades establishes that choking and punching nonresistant individuals violates the Fourth Amendment. And, even without those cases, the broad statement of law in *Graham* applies with obvious clarity to Mr. Jones's case.

## **STANDARD OF REVIEW**

This Court reviews the District Court's grant of summary judgment *de novo*. *See Burton v. Tampa Hous. Auth.*, 271 F.3d 1274, 1276–77 (11th Cir. 2001). In doing so, this Court "accept[s] [Mr. Jones's] version of the facts as true, affording all justifiable inferences to [him]." *Sconiers v. Lockhart*, 946 F.3d 1256, 1260 (11th Cir. 2020). Summary judgment is inappropriate if a rational juror could find that, based on Mr. Jones's record evidence, force was excessive; "[t]he only question for [this

11

Court] to decide is whether the record evidence, when viewed in a light most favorable to [Mr. Jones], contains a genuine dispute of material fact . . . ." *Sutton v. Wal-Mart Stores East, LP*, 64 F.4th 1166, 1168 (11th Cir. 2023).

## ARGUMENT

## I. OFFICER CEINSKI VIOLATED THE FOURTH AMENDMENT BY USING EXCESSIVE FORCE AGAINST MR. JONES.

Courts analyze the reasonableness of an officer's use of force by considering three factors set forth in *Graham*: (1) the severity of the offense of which an individual is suspected; (2) whether the individual presents a danger or threat to those around them; and (3) whether the individual is actively resisting arrest or fleeing. 490 U.S. at 396. Where the *Graham* factors favor a plaintiff, a defendant officer may only be entitled to summary judgment if the undisputed record evidence establishes that an encounter involved a "minimal amount of force and injury . . . ." *Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000).

Taking the facts in the light most favorable to Mr. Jones, all three *Graham* factors support the finding that Officer Ceinski used excessive force against Mr. Jones and that the amount of force and injuries were not de minimis. The District Court failed to properly consider these factors and ignored this Court's precedent by holding that the mere presence of a lawfully possessed gun in the car—out of Mr. Jones's reach and readily disclosed by him—made it reasonable for Officer Ceinski to choke Mr. Jones to the point he could not breathe, use a wrist lock, and punch his

12

head. The District Court failed to properly weigh the fact that Mr. Jones is a physically disabled man who was non-threatening, compliant, and non-resisting, and this force resulted in significant harm, including an umbilical hernia, wrist pain, and lasting emotional damage. In this way, the Court's analysis disregards Fourth Amendment precedent and misapplies the summary judgment standard.

### A.    The First *Graham* Factor Favors Mr. Jones Because He Was Stopped for a Minor Traffic Violation.

The first *Graham* factor favors Mr. Jones because the offense, moving a vehicle out of an intersection with an open car door, is obviously minor. Officer Ceinski did not dispute this point, and the District Court agreed that the traffic violation was minor. Doc. 53 at 13; Doc. 42 at 7. "Since *Graham* establishes generally that . . . less force is appropriate for a less serious [offense], this factor strongly weighs in favor of [Mr. Jones]." *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002); *accord Brown v. City of Huntsville*, 608 F.3d 724, 740 (11th Cir. 2010) (finding that the use of force for a minor offense violates the Constitution).

### B.    The Second *Graham* Factor Favors Mr. Jones Because He Did Not Pose an Immediate Threat to Officer Ceinski's Safety.

A reasonable juror could easily determine that Mr. Jones did not pose an immediate threat to Officer Ceinski's safety. The record demonstrates Mr. Jones showed his concealed carry permit to Officer Ceinski and disclosed the presence of the weapon to be compliant and forthcoming. Mr. Jones stood outside the car,

following directions, when he told Officer Ceinski about his firearm that was in his vehicle and was not immediately reachable. Doc. 49 at 2; Doc. 41 at 10–11. Mr. Jones made no threatening moves or indication that he would try to obtain the gun. Doc. 49 at 2. Rather than ask Mr. Jones to step further away, sit on the curb, or take some other action while Officer Ceinski retrieved the firearm, Officer Ceinski instead proceeded to use a chokehold, wrist lock, and punch to the head.

When the record is viewed in the light most favorable to Mr. Jones, none of his conduct indicated he was a threat that justified this considerable use of force. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1157 (11th Cir. 2005) (using foam baton projectile on even an armed individual violates the Fourth Amendment where the individual makes no threatening moves towards the officer or others); *see also Sebastian v. Ortiz*, 918 F.3d 1301, 1311 (11th Cir. 2019) (denying qualified immunity to officers who used excessive force by applying handcuffs in an unreasonably tight manner after a plaintiff was outside his car and informed the officers he had a licensed firearm in the car).

Mr. Jones's physical disability underscores that a factfinder could rationally determine he posed no danger to Officer Ceinski. Taking the facts in the light most favorable to Mr. Jones, Officer Ceinski saw Mr. Jones's physical disabilities, heard about his disability from the car's passenger, and made repeated comments about Mr. Jones's disability. *See* Doc. 49 at 2; Doc. 49-3. A reasonable factfinder could

14

find that not only was Mr. Jones making no immediate threats to Officer Ceinski's safety, but he would have had a limited ability to do so given his physical disability. *See Winterrowd v. Nelson*, 480 F. 3d 1181, 1186 (9th Cir. 2007) (holding that officer's use of force for minor traffic violation was not justified when there was firearm in car but inaccessible at the time, and detainee had physical limitations).

The District Court nonetheless held, as a matter of law, that the second *Graham* factor favored Officer Ceinski because "[a]n individual near a vehicle where a weapon could be accessed during a traffic stop is considered an immediate threat to officer safety." Doc. 53 at 12. But, in so doing, the Court ignored this Circuit's jurisprudence, which states that the "mere presence of a weapon" is not enough to establish the reasonableness of force; rather, "[w]here the weapon [i]s, what type of weapon it [i]s, and what [i]s happening with the weapon are all inquiries crucial to the reasonableness determination." *Perez v. Susczynski*, 809 F.3d 1213, 1220 (11th Cir. 2016). Here, Mr. Jones was outside of the car and away from the gun, readily disclosed the gun to Officer Ceinski, and made no efforts to reach towards his vehicle; indeed, he was forthcoming and fully compliant with all of Officer Ceinski's commands throughout the encounter. Doc. 49 at 2. These facts, under *Perez*, negate any suggestion that the mere presence of a licensed firearm presented a threat to Officer Ceinski.

15

Further, the District Court's reasoning inverts the constitutional guarantee of the Second Amendment by greenlighting choking and punching a peaceful, non-threatening individual simply because they exercised their constitutional right to possess a firearm. Indeed, the District Court's decision could create the undesirable effect of disincentivizing disclosure of firearms if law enforcement officers are entitled to assault an individual just because they are stopped while lawfully possessing a firearm.

Taking all facts and drawing all reasonable inferences in Mr. Jones's favor as the law requires, Mr. Jones made no efforts to open the car door and grab the firearm he voluntarily disclosed. He took no actions that would create any threat to Officer Ceinski or another person. In fact, he was forthcoming and compliant throughout the stop. The District Court should have found that the second *Graham* factor favors Mr. Jones.

### C.    The Third *Graham* Factor Favors Mr. Jones Because He Did Not Resist Arrest or Attempt to Flee.

The record clearly establishes the fact that Mr. Jones did not physically resist arrest or attempt to flee, and the third *Graham* factor is thus in his favor. *See* Doc. 50 at 45; Doc. 49 at 2 ("At no point in time was I ever resisting."); *see also Stephens v. DeGiovanni*, 852 F.3d 1298, 1323–24 (11th Cir. 2017) (holding that the third *Graham* factor favors an arrestee who "never attempted to flee the scene of his arrest."). The District Court erred by failing to address this factor at all in its analysis.

16

\* \* \*

Considering the totality of the circumstances, all three *Graham* factors favor a holding that Officer Ceinski used excessive force against Mr. Jones. The District Court did not point to a single case in which a court held that the use of force was reasonable simply because an individual detained outside of their vehicle told an officer they had a firearm inside the vehicle. On the contrary, every case cited by the District Court involved individuals who refused to comply with officer instructions, physically resisted, or attempted to flee. *See Baxter v. Roberts*, 54 F.4th 1241, 1251, 1269 (11th Cir. 2022) (granting qualified immunity where plaintiff physically resisted arrest and repeatedly refused to comply with officer's instructions); *Moore v. Gwinnett Cnty.*, 967 F.2d 1495, 1498 (11th Cir. 1992) (reversing denial of qualified immunity where plaintiff drove around police barricade, ran from her car after being pulled over, refused to comply with instructions, and fled for a second time); *Bolt v. Losa*, No. 09-60963-CV, 2010 WL 5538720 at \*12 (S.D. Fla. Dec. 6, 2010) (recommending summary judgment be granted for officers on excessive force claim where plaintiff attempted to flee, physically resisted restraint by punching and elbowing officers, and tried to get control of an officer's weapon); *Edwards v. Monmany*, No. 2:19-cv-711-SPC-NPM, 2023 WL 145011, at \*3 (M.D. Fla. Jan. 10, 2023) (granting summary judgment for officer where plaintiff reached into his car after officer instructed him to stop moving towards car). Mr. Jones was not only

17

compliant, but also did not attempt to resist or flee. For these reasons, the District Court erred by holding that Officer Ceinski's use of force was reasonable under the circumstances.

### D.    The District Court Erred in Holding that Officer Ceinski Used De Minimis Force Because Mr. Jones Suffered Only Minor Injuries.

Drawing all inferences in Mr. Jones's favor, a reasonable jury could conclude Officer Ceinski used significant force—a chokehold making Mr. Jones unable to breathe, a wrist lock, and a punch to the head—irrespective of his injuries. Moreover, a jury could credit Mr. Jones's testimony that he sustained significant injuries because of Officer Ceinski's assault.

The District Court erred in holding to the contrary, relying on its determination that Mr. Jones "suffered only minor injuries from the incident," and that, as a result, Mr. Jones could not maintain an excessive force claim. Doc. 53 at 13–14. Both of those determinations were incorrect. In making them, the District Court failed to view the evidence in the light most favorable to Mr. Jones and ignored settled law from this Court concerning excessive force claims.

### 1.    The District Court's Determination that Mr. Jones's Injuries Were Minor Misapplied the Summary Judgment Standard and is Legally Irrelevant.

A reasonable jury could easily determine that Mr. Jones suffered much more than "minor" injuries. The incident caused "an umbilical hernia as [Mr. Jones] was twisted by the officer." Doc. 49 at 3. Mr. Jones's wrist was wrapped by medical

18

professionals in urgent care because Officer Ceinski's assault gave him a "possible wrist fracture." *Id*. He was also evaluated at the hospital for a head contusion, rib pain, and shoulder injury resulting from Officer Ceinski's use of force. *Id*.; Doc. 41 at 29–30. Finally, Mr. Jones described the lasting emotional damage of this event. Doc. 41 at 4–5.

This Court has held that injuries like the ones Mr. Jones suffered are significant. Wrist injuries and fractures, for example, are serious enough to support excessive force claims. *See West v. Davis*, 767 F.3d 1063, 1066–67 (11th Cir. 2014) (reversing summary judgment based on qualified immunity for an excessive force claim where the courthouse security officer twisted the plaintiff's wrist, causing her to need a wrist splint and a later carpal tunnel release procedure); *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997) (affirming denial of summary judgment because the "severity of [the] injury"—an arm fracture—"push[ed the] case over the line" to be excessive force). Additionally, emotional distress is an injury that can support an excessive force claim. *Lee*, 284 F.3d at 1192 (describing the plaintiff's psychological injuries).

The District Court omitted most of this evidence and adopted Officer Ceinski's characterization of Mr. Jones's injuries as "minor." *See* Doc. 40 at 16. The District Court only mentioned that "Mr. Jones was released with a wrap on one wrist" and that "the paramedics on scene received complaints only about his neck

19

and no visible injuries were evident." Doc. 53 at 14–16. Nowhere did the District Court mention that Mr. Jones sustained a hernia, or that he was evaluated for head trauma and shoulder injuries.

Even if Mr. Jones had suffered "minimal" injuries as the District Court determined, however, he would still be permitted to maintain an excessive force claim. This Court has unequivocally held that the fact that an arrestee does not suffer greater injuries "does not alone render the force used de minimis." *Lee*, 284 F.3d at 1200. In other words, de minimis injury does not necessarily mean that de minimis force was used. As this Court has explained, "objectively unreasonable force does not become reasonable simply because the fortuity of the circumstances protected the plaintiff from suffering more severe physical harm." *Id.* The District Court erred in its unsupported suggestion that a plaintiff who suffers only "minor" injuries cannot maintain an excessive force claim.

### 2. *The District Court Misapplied the Summary Judgment Standard and Relied on Inapposite Cases to Find Officer Ceinski's Force was De Minimis.*

The types of force Officer Ceinski used—a punch to the head, a chokehold, and a wrist lock—are precisely the kind that this Court has recognized as significant. Mr. Jones testified that Officer Ceinski grabbed his wrist, twisted his arm, pushed him against the car, and put him in a chokehold. Doc. 49 at 2. Indeed, Mr. Jones stated that Officer Ceinski choked him for so long and with such force that Mr. Jones

could not breathe. Doc. 49 at 2. This testimony more than establishes that Officer Ceinski used more than de minimis force.

This Court has expressly held that even a "single punch to the stomach" can constitute excessive force when delivered to someone who "neither resisted arrest nor posed a danger" to anyone. *Hadley v. Gutierrez*, 526 F.3d 1324, 1327 (11th Cir. 2008). And while this Court has not expressly determined the level of force involved in employing a chokehold, it has recognized deadly force as "force that creates 'a substantial risk of causing death or serious bodily harm.'" *Pruitt v. City of Montgomery,* 771 F.2d 1475, 1479 n.10 (11th Cir. 1985) (citing Model Penal Code (MPC) § 3.11(2) (1962)). Applying that principle, numerous district courts in this Circuit have held that chokeholds are deadly force. *See Pickens v. Toney*, No. 521CV00610ACAHNJ, 2023 WL 5487389, at *20 (N.D. Ala. July 31, 2023), *report and recommendation adopted*, No. 521CV00610ACAHNJ, 2023 WL 5439773 (N.D. Ala. Aug. 23, 2023) ("A chokehold amounts to the risk of deadly force, and therefore it constitutes disproportionate force if an officer uses it in unwarranted circumstances."); *Toth v. City of Dothan*, 953 F. Supp. 1502, 1511 n.11 (M.D. Ala. 1996) ("Neither [a chokehold or barhold] is considered by the court to be reasonable police procedure unless an officer is in danger of death or grievous bodily harm.").[4]

---

[4] The Ninth Circuit has also recognized that chokeholds meet this standard. *See Gahn v. Fujino*, Nos. 93–35525, 93–35535, 1994 WL 587527, at *3 (9th Cir.

Indeed, even the Sarasota County Sheriff's Office—which employs Officer Ceinski—recognizes that "any kind of neck restraint is deadly force" to be used only "in a deadly force situation." Doc. 43 at 18.

The District Court reached the contrary conclusion by ignoring Mr. Jones's testimony about the nature of force involved, thereby misapplying the summary judgment standard, and, as a result, analogizing Officer Ceinski's conduct to inapposite cases. In its discussion of the level of force Officer Ceinski used, the District Court omitted all references to the punch, and mischaracterized the chokehold used as a "grab[]" that "had the effect of 'choking'" Mr. Jones. Doc. 53 at 3–4. It also adopted Officer Ceinski's description of the force being more like a "'push or a shove.'" Doc. 53 at 14 (quoting *Perez v. Wicker*, No. 2:14-CV-558-FTM-29CM, 2016 WL 3543502, at *4 (M.D. Fla. June 29, 2016)); *see also* Doc. 40 at 16 (same).

Based on these inappropriate adoptions of Officer Ceinski's testimony, the District Court analogized Mr. Jones's claim to cases involving far less force than a chokehold, wrist lock, and a punch to the head. *See Taylor v. Taylor*, 649 F. App'x 737, 741 (11th Cir. 2016) (officer grabbing arrestee by the upper arms and pushing her into the side of a car to handcuff her); *Woodruff v. City of Trussville*, 434 F.

---

Oct. 21, 1994) ("A choke hold can cause serious bodily injury or even death.") (citing *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1411 (9th Cir. 1986)).

App'x 852, 853 (11th Cir. 2011) (officers removed plaintiff from the car and threw him to the pavement); *Nolin v. Isbell*, 207 F.3d at 1257 (holding officer was entitled to qualified immunity where he grabbed the plaintiff from behind by the shoulder and wrist, threw him against a van, kneed him in the back, and pushed his head into side of van). Tellingly, none of the cases cited by the District Court or Officer Ceinski involved punches or chokeholds—and thus provide no basis for granting Officer Ceinski summary judgment.

In sum, properly taking the evidence in the light most favorable to Mr. Jones, a reasonable factfinder could find that Officer Ceinski used far more than de minimis force.

## II.    OFFICER CEINSKI VIOLATED MR. JONES'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT.

In assessing an official's entitlement to qualified immunity, "[t]he salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (cleaned up). Fair warning can be established in different ways. A plaintiff may, for example, identify a materially similar case clearly establishing a constitutional right. *Glasscox v. City of Argo*, 903 F.3d 1207, 1217 (11th Cir. 2018). Alternatively, they may "show[] that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official." *Cantu v. City of*

23

*Dothan*, 974 F.3d 1217, 1232 (11th Cir. 2020). In such situations, a plaintiff need not point to case law with identical facts to overcome qualified immunity—the legal rule itself is dispositive.

Mr. Jones's evidence establishes a violation of his clearly established law under both theories. First, binding case law from this Circuit has long recognized that even a single punch to an individual who is not resisting arrest and poses no threat violates the Fourth Amendment. For years—and well before August 8, 2020—this Court has recognized that strikes, punches, and other similar force cannot be used simply because an individual has a lawful weapon near them but makes no effort to reach or use it. Second, this Circuit has recognized that *Graham* itself clearly establishes the rights of individuals where, as here, each of the three relevant factors strongly favor a plaintiff.

**A.    Binding, Materially Similar Precedent Clearly Establishes That Punching and Choking a Nonresistant Individual Violates the Fourth Amendment.**

Since at least 2002, this Court has been unequivocal: even a single gratuitous use of force against an individual who is not resisting arrest violates the Fourth Amendment. In *Lee*, this Court denied qualified immunity to an officer who engaged in a single act of slamming a compliant motorist's head against the hood of her car while calling her a "black b----." 284 F.3d at 1199–1200. In so doing, this Court recognized that the officer had pulled the woman over for a minor infraction—

honking her car in arguable violation of a municipal noise ordinance—and that the motorist "clearly posed no threat at all to the officer or to anyone else and no risk of flight." *Id.* at 1198.

The principle that a single use of force against an individual who poses no threat and is no risk of flight does not depend on the specific type of force involved. Years later, relying on *Lee*, this Court again denied qualified immunity to an officer who delivered a "single punch to the stomach" of a Black man while calling him a racial slur. *Hadley*, 526 F.3d at 1327. Again, this Court recognized that the plaintiff in that case "neither resisted arrest nor posed a danger" to the officer, rendering even one punch a violation of his clearly established rights. *Id.* at 1330. And, citing *Lee*, it went on to announce an unambiguous principle: "punching a non-resisting criminal suspect for no apparent reason other than malice . . . is not protected by our constitution." 526 F.3d 1324, 1334 (11th Cir. 2008).[5]

This Court has continued to rely on *Lee* and *Hadley* and "repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Saunders v. Duke*, 766 F.3d 1262,

---

[5] *Hadley* and *Lee* both involved uses of force on individuals who were handcuffed. But "the same rationale applies to the use of gratuitous force when the excessive force is applied prior to the handcuffing but in the course of the investigation and arrest, all part of the arrest procedure . . . ." *Stephens*, 852 F.3d at 1328 n.33.

1265 (11th Cir. 2014) (denying qualified immunity to officer who engaged in a single tackle); *accord Richmond v. Badia*, 47 F.4th 1172, 1184 (11th Cir. 2022) (denying qualified immunity to officer who slammed student to ground).

Further, this Circuit's precedent has long been clear that, when an individual possesses a weapon but is not making threatening moves or attempting to access the weapon, an officer's use of force violates the Fourth Amendment. In *Mercado*, for example, police officers fired bean bag rounds at a mentally ill man "armed with a knife" and "holding the knife in both hands" after using the knife to cut his arms. 407 F.3d at 1154. This Court found that the officers' conduct violated clearly established law as of 2005, reasoning that there was "no indication that [the man] made any threatening moves toward the police." *Id.* at 1157. Relying in part on *Mercado*, this Court reaffirmed the clear rule that the mere presence of a weapon— even a firearm—does not permit significant force in 2019. In *Sebastian*, police officers applied handcuffs and plastic flex cuffs to an arrestee in an overly tight manner, and positioned his hands in a deliberately uncomfortable manner, upon learning that the man had a licensed firearm in his car. 918 F.3d at 1305–06. Despite the presence of the firearm, this Court determined that "there [wa]s not the slightest indication in this record that [the arrestee] posed a threat to officer safety or to anyone else" because the arrestee simply verbally refused to allow a search of his vehicle. *Id.* at 1310.

These principles squarely govern Mr. Jones's case. As discussed above, Mr. Jones "neither resisted arrest nor posed a danger" to Officer Ceinski. *Hadley*, 526 F.3d at 1330. Just as in *Sebastian*, the mere presence of a lawful firearm in his car "[wa]s not the slightest indication" that Mr. Jones was a threat to anyone. 918 F.3d at 1310. And just as in *Hadley*, Officer Ceinski delivered a punch to Mr. Jones's head while calling him slurs based on his race and disability. *Id.* at 1327. That alone would be sufficient to strip Officer Ceinski of qualified immunity; "there was no doubt at the time of this incident that, in this Circuit, striking a compliant and nonthreatening suspect constitutes excessive force." *Saunders*, 766 F.3d at 1265. But Officer Ceinski did more, choking Mr. Jones into near-unconsciousness and mocking his disability. Doc. 49 at 2. "[I]f an officer cannot [deliver a single punch] under these circumstances, the officer certainly cannot engage in additional unnecessary force . . . ." *Brooks v. Miller*, 78 F.4th 1267, 1283 (11th Cir. 2023). Under *Lee*, *Hadley*, and *Saunders*, therefore, reasonable officers would have known that punching and choking a disabled, nonresistant Black man, while hurling slurs at him, violated the Fourth Amendment.

**B.** ***Graham v. Connor* Clearly Establishes that Officer Ceinski Used Excessive Force.**

Even in the absence of *Lee*, *Hadley*, and their progeny, Officer Ceinski would not be entitled to qualified immunity. In excessive force cases, "a right can be clearly established even in the absence of caselaw" where there is "'obvious clarity' that an

officer's conduct would violate a clearly established right . . ." *Hoyt v. Cooks*, 672 F.3d 972, 978 (11th Cir. 2012). This occurs where the "application of [the *Graham* factors] would inevitably lead every reasonable officer in the defendant's position to conclude that the force was unlawful." *Jay v. Hendershott*, 579 F. App'x 948, 953 (11th Cir. 2014) (citing *Hoyt*, 672 F.3d at 978). Put differently, "qualified immunity is not appropriate when the *Graham* analysis yields an answer that is clear beyond all doubt." *Lee*, 284 F.3d at 1200.

Applying this general principle, this Court has determined that *Graham* alone can clearly establish the law where each of the *Graham* factors decisively favors a plaintiff. *See, e.g.*, *Sebastian*, 918 F.3d at 1311–12 (denying qualified immunity "[e]ven though this Court has not addressed a similar fact pattern" because "*Graham* dictates unambiguously that force used . . . must be reasonably proportionate to the need for that force"); *Stephens*, 852 F.3d at 1323 (denying qualified immunity without citing analogous case law based on application of the *Graham* factors alone); *Landsman v. City of Vero Beach*, 621 F. App'x 559, 563 (11th Cir. 2015) (denying qualified immunity to an officer's "use of force against an arrestee who, *inter alia,* is not a threat, has not exhibited aggressive behavior, and has not actively resisted arrest").

This is precisely such a case. As discussed *supra*, Section I, all three *Graham* factors heavily favor Mr. Jones. He "showed no hostility to [Officer Ceinski], did

not disobey any orders, and did not make any menacing gestures," which made Officer Ceinski's use of force "clearly wrong." *Fils v. City of Aventura*, 647 F.3d 1272, 1292 (11th Cir. 2011). Thus, even if there were no factually analogous case law clearly establishing the unlawfulness of Officer Ceinski's conduct—and there is—he would *still* not be entitled to qualified immunity.

## <u>CONCLUSION</u>

For the foregoing reasons, the District Court's grant of summary judgment should be reversed.

Respectfully Submitted,

/s/ Arielle Humphries

JANAI S. NELSON
    *Director-Counsel*
SAMUEL SPITAL
ARIELLE HUMPHRIES
ASHOK CHANDRAN
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200

CHRISTOPHER E. KEMMITT
MOLLY M. CAIN
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street NW, Ste. 600
Washington, DC 20005
(202) 682-1300

DAVID WILLIAM SMITH
LAW OFFICE OF DAVID W. SMITH
5020 Clark Rd., Ste. 413
Sarasota, FL 34233
(941) 312-3078

*Counsel for Plaintiff-Appellant*

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this brief complies with the applicable typeface and volume limitations of Federal Rules of Appellate Procedure 29(a)(5). This brief contains 7,415 words, exclusive of the components that are excluded from the word count limitation in Rule 32(f). This certificate was prepared in reliance upon the word-count function of the word processing system used to prepare this brief (Microsoft Word 2010). This brief complies with the typeface and type style requirements of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface using Times New Roman, font size 14.

/s/ Arielle Humphries
Arielle Humphries
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
ahumphries@naacpldf.org
(212) 965-2200

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Rule 25(d) of the Federal Rules of Appellate Procedure, I hereby certify that on this 29th day of November, 2023, I electronically filed the foregoing Brief of Appellant Jeremy Jones with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Arielle Humphries
Arielle Humphries
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
ahumphries@naacpldf.org
(212) 965-2200

32