# UNITED STATES COURT OF APPEALS
## ELEVENTH CIRCUIT

**JEREMY JONES,**

      Plaintiff/Appellant,

                                    **NO. 23-12178**

v.                                      **USDC No. 8:22-cv-231**

**DAVID CEINSKI, JR.,**

      Defendant/Appellee,

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

---

## ANSWER BRIEF FOR APPELLEE

---

**JOSHUA B. MOYE, COUNTY ATTORNEY**
**SCOTT T. BOSSARD, ASSISTANT COUNTY ATTORNEY**
**Florida Bar No. 0038407**
**Office of the County Attorney**
**Sarasota County, Florida**
**1660 Ringling Boulevard, Second Floor**
**Sarasota, Florida 34236**
**Telephone: (941) 861-7272**
**Facsimile:   (941) 861-7267**
**Attorneys for Appellee**

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMNT</u>

Counsel for Appellee, DAVID CEINSKI, JR. ("Ceinski"), individually, certifies pursuant to Eleventh Circuit Rule 26.1(a) that the following person or entities have or may have an interest in the outcome of this case:

Joshua B. Moye, Esq., County Attorney, Sarasota County Office of the County Attorney, 1660 Ringling Boulevard, 2d Floor, Sarasota, FL 34236, law firm representing DAVID CEINSKI, JR., in his individual capacity.

Scott T. Bossard, Esq., Assistant County Attorney, Sarasota County Office of the County Attorney,1660 Ringling Boulevard, 2d Floor, Sarasota, FL 34236, attorney for Defendant/Appellee, DAVID CEINSKI, JR., in his individual capacity.

Defendant/Appellee, DAVID CEINSKI, JR., in his individual capacity, care of his attorney, Scott T. Bossard, Esq., 1660 Ringling Boulevard, 2d Floor, Sarasota, FL 34236.

Kurt A. Hoffman, Sheriff of Sarasota County, Florida, 6010 Cattleridge Blvd., Sarasota, FL 34232.

Sarasota County Sheriff's Office, 6010 Cattleridge Blvd., Sarasota, FL 34232.

Sarasota County Government, 1660 Ringling Boulevard, Sarasota, FL 34236.

Plaintiff/Appellant, JEREMY JONES, care of his attorneys, David W. Smith, Esq., 5020 Clark Road #412, Sarasota, FL 34233; Arielle Humphries, Esq., NAACP Legal Defense & Educational Fund, Inc., 40 Rector Street, 5th Floor, New York, NY 10006.

Adam Gershenson, Esq., Cooley LLP, 500 Boylston Street, 14th Floor, Boston, MA 02116-3736, counsel for amici curiae Giffords Law Center to Prevent Gun Violence and Brady Center to Prevent Gun Violence.

Daniel Tilley, Esq., American Civil Liberties Union Foundation of Florida, 4343 West Flagler Street, Suite 400, Miami, Florida 33134, counsel for amicus curiae American Civil Liberties Union Foundation and ACLU Foundation of Florida.

The Honorable Amanda Arnold Sansone, Magistrate Judge, United States District Court, Middle District of Florida.

The Honorable Kathryn Kimball Mizelle, District Judge, United States District Court, Middle District of Florida.

## STATEMENT REGARDING ORAL ARGUMENT

The Appellee does not request oral argument. This case presents neither complex issues of law nor complex facts. Therefore, it is not contemplated the decisional process would be significantly aided by oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND
    CORPORATE DISCLOSURE STATEMENT  .    .    .    ii

STATEMENT REGARDING ORAL ARGUMENT  .   .   .   iii

TABLE OF CONTENTS    .    .    .    .    .    .    iv

TABLE OF CITATIONS    .    .    .    .    .    .    v

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION .    .    .    .    .    .    .    .    .    x

STATEMENT OF THE ISSUES    .    .    .    .    .    xi

STATEMENT OF THE CASE    .    .    .    .    .    1

STATEMENT OF THE FACTS    .    .    .    .    .    2

STANDARD OF REVIEW    .    .    .    .    .    8

SUMMARY OF THE ARGUMENT    .    .    .    .    9

ARGUMENT    .    .    .    .    .    .    .    10

        THE DISTRICT COURT CORRECTLY ENTERED SUMMARY
        JUDGMENT IN FAVOR OF DEPUTY CEINSKI UNDER
        SECTION 1983 BASED ON QUALIFIED IMMUNITY BECAUSE
        THE UNDISPUTED FACTS DEMONSTRATED NO VIOLATION
        OF JONES' CONSTITUTIONAL RIGHTS AND NO VIOLATION
        OF CLEARLY ESTABLISHED LAW.

CONCLUSION    .    .    .    .    .    .    .    23

CERTIFICATE OF COMPLIANCE WITH RULE 32(g) OF THE
FEDERAL RULES OF APPELLATE PROCEDURE .    .    .    24

CERTIFCATE OF SERVICE    .    .    .    .    .    24

# TABLE OF CITATIONS

**CASES** **PAGE(S**

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)  .    .    .    .    .    .    8-9

*Arizona v. Johnson,*
    555 U.S. 323 (2009)  .    .    .    .    .    .    15, 20

*Bates v. Harvey,*
    518 F.3d 1233 (11th Cir. 2008) .    .    .    .    .    11

*Baxter v. Roberts,*
    54 F.4th 1241 (11th Cir. 2022) .    .    .    .    .    17-18

*Beshers v. Harrison,*
    495 F.3d 1260 (11th Cir. 2007) .    .    .    .    .    15

*Bhogaita v. Altamonte Heights Condo. Ass'n,*
    765 F.3d 1277 (11th Cir. 2014) .    .    .    .    .    8

*Bolt v. Losa,*
    2010 U.S. Dist. LEXIS 138832 (S.D. Fla. 2010)  .    .    17

*Brendlin v. California,*
    551 U.S. 249 (2007)  .    .    .    .    .    .    16, 20, 22

*Btesh v. City of Maitland,*
    2011 U.S. Dist. LEXIS 83464 (M.D. Fla. 2011)  .    .    15

*City of Tahlequah v. Bond,*
    142 S. Ct. 9 (2021).    .    .    .    .    .    12

*Cooks v. Kremler,*
    2023 U.S. Dist. LEXIS 41333 (M.D. Fla. 2023) . . 14

*Davis v. White,*
    794 F.3d 1008 (8th Cir. 2015) . . . . . 18-19

*District of Columbia v. Wesby,*
    138 S. Ct. 577 (2018) . . . . . . 12

*Edwards v. Monmany,*
    2023 U.S. Dist. LEXIS 4435 (M.D. Fla. 2023) . . 16, 20, 22

*Garczynski v. Bradshaw,*
    573 F.3d 1158 (11th Cir. 2009) . . . . . 13

*Gonzalez v. Lee County Housing Authority,*
    161 F.3d 1290 (11th Cir. 1998) . . . . . 12

*Graham v. Connor,*
    490 U.S. 386 (1989) . . . . . . 13-15

*Hadley v. Gutierrez,*
    526 F.3d 1324 (11th Cir. 2008) . . . . . 21

*Hope v. Pelzer,*
    536 U.S. 730 (2002) . . . . . . 11-12

*Jones v. City of Dothan,*
    121 F.3d 1456 (11th Cir. 1997) . . . . . 18

*Jones v. UPS Ground Freight,*
    683 F.3d 1283 (11th Cir. 2012) . . . . . 9

*Kingsley v. Hendrickson,*
    576 U.S. 389 (2015) . . . . . . 19

*Lee v. Ferraro*,
284 F.3d 1188 (11th Cir. 2002) .    .    .    .    .    21

*Leslie v. Ingram*,
786 F.2d 1533 (11th Cir. 1986) .    .    .    .    .    17

*Malley v. Briggs*,
475 U.S. 335 (1986)    .    .    .    .    .    .    12

*Maryland v. Wilson*,
519 U.S. 408 (1997)    .    .    .    .    .    .    15-16, 20, 22

*Michigan v. Long*,
463 U.S. 1032 (1983)    .    .    .    .    .    .    15

*Mobley v. Palm Beach County Sheriff's Dept.*,
783 F.3d 1347 (11th Cir. 2015) .    .    .    .    .    13-14

*Moore v. Gwinnett County*,
967 F.2d 1495 (11th Cir. 1992) .    .    .    .    .    17

*Myers v. Bowman*,
713 F.3d 1319 (11th Cir. 2013) .    .    .    .    .    18

*Pace v. City of Palmetto*,
489 F. Supp. 2d 1325 (M.D. Fla. 2007)    .    .    .    15

*Pearson v. Callahan*,
555 U.S. 223 (2009)    .    .    .    .    .    .    11

*Penley v. Eslinger*,
605 F.3d 843 (11th Cir. 2010) .    .    .    .    .    11

*Pennsylvania v. Mimms,*
    434 U.S. 106 (1977) . . . . . . 16

*Perez v. Wicker,*
    2016 U.S. Dist. LEXIS 84456 (M.D. Fla. 2016) . . 18

*Peterson v. Atlanta Housing Authority,*
    998 F.2d 904 (11th Cir. 1993) . . . . . 9

*Post v. City of Fort Lauderdale,*
    7 F.3d 1552 (11th Cir. 1993) . . . . . 18

*Presley v. State,*
    227 So. 3d 95 (Fla. 2017). . . . . . 16

*Renthrope v. Toffton,*
    2007 U.S. Dist. LEXIS 101050 (W.D. La. 2007) . . 19

*Richmond v. Badia,*
    47 F. 4th 1172 (11th Cir. 2022) . . . . . 22

*Rodriguez v. Farrell,*
    280 F.3d 1341 (11th Cir. 2002) . . . . . 18

*Saucier v. Katz,*
    533 U.S. 194 (2001) . . . . . . 11

*Saunders v. Duke,*
    766 F.3d 1262 (11th Cir. 2014) . . . . . 21-22

*Smith v. Freland,*
    954 F.2d 343 (6th Cir. 1992) . . . . . 13

*Thompson v. Bailey,*
    309 F.R.D. 236 (N.D. Miss. 2015) . . . . 19

*Troupe v. Sarasota County,*
    419 F.3d 1160 (11th Cir. 2005) . . . . . . 13

*Vinyard v. Wilson,*
    311 F.3d 1340 (11th Cir. 2002) . . . . . . 15

*White v. Pauly,*
    137 S. Ct. 548 (2017) . . . . . . . 12

## STATUTES & CONSTITUTIONS      PAGE(S)

U.S. Const. Amend. IV . . . . . . . 1-2, 13, 16-18, 20-21

28 U.S.C. § 1291 . . . . . . . . xi

42 U.S.C. § 1983 . . . . . . . . xii, 1, 10, 19, 21

## RULES & OTHER AUTHORITIES      PAGE(S)

Fed. R. Civ. P. 56 . . . . . . . . 1

Fed. R. App. P. 32(g) . . . . . . . 24

Eleventh Circuit Rule 26.1(a) . . . . . . ii

Middle District of Florida Local Rule 3.01 . . . . 1

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Appellee (hereinafter "Deputy Ceinski") agrees with Appellant's (hereinafter "Jones") statement regarding the basis for the District Court's subject matter jurisdiction of the underlying action. Deputy Ceinski further agrees with Jones' statement regarding this Court's appellate jurisdiction under 28 U.S.C. § 1291 to consider this appeal. Deputy Ceinski also agrees with Jones' statement that the notice of appeal was timely filed.

## STATEMENT OF THE ISSUES

I.    Whether the District Court correctly granted summary judgment in favor of Deputy Ceinski under 42 U.S.C. § 1983 based on qualified immunity where the undisputed facts demonstrated Deputy Ceinski did not use unreasonable force in violation of the Fourth Amendment against Jones during their encounter on August 8, 2020.

II.   Whether the District Court correctly granted summary judgment in favor of Deputy Ceinski under 42 U.S.C. § 1983 based on qualified immunity where the undisputed facts demonstrated no violation of clearly established statutory or constitutional rights of which a reasonable person would have known.

## STATEMENT OF THE CASE

This is an appeal from a final order from the Middle District of Florida that granted a motion for summary judgment in favor of Deputy Ceinski and directed the clerk to enter judgment in his favor and close the case. (Dkt. 53)[1].

Jones sued Deputy Ceinski, in his individual capacity under 42 U.S.C. § 1983, for an alleged violation of his federal constitutional rights under the Fourth Amendment to the United States Constitution. *See* Dkt. 1. Jones specifically alleged that during a traffic stop, Deputy Ceinski "physically grabbed" him and "pulled him from the vehicle." *Id.* at ¶¶ 12-19. Jones further alleged Deputy Ceinski "grabbed" him "by his clearly fragile wrist and twisted him into a choke hold" and thereafter punched him "on the top of his head." *Id.* at ¶¶ 20-21. Jones sought compensatory damages and other ancillary relief. *Id.* at p. 5.

Deputy Ceinski moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure and Middle District of Florida Local Rule 3.01. (Dkt. 40). As to Jones' Section 1983 excessive force claim, Deputy Ceinski's motion argued that he used reasonable physical force on Jones, precluding any Fourth Amendment excessive force claim against him. *Id.* Deputy Ceinski further argued

---

[1] References to the record below shall correspond with the district court docket number. Thus, the order granting the motion for summary judgment, which is identified by the District Court by docket number 53 is herein cited as "Dkt 53."

that, assuming *arguendo,* a Fourth Amendment violation could be found, Deputy Ceinski could not be found to have violated clearly established law. *Id.*

On May 30, 2023, the District Court granted Deputy Ceinski's motion for summary judgment, directing the entry of judgment in favor of Deputy Ceinski. (Dkt. 53). The order below determined that the undisputed facts demonstrated qualified immunity protected Deputy Ceinski because he did not violate Jones' constitutional rights and, even if a violation could have been shown, qualified immunity nonetheless applied because there was no violation of clearly established law. *Id.* Final judgment based on the order granting summary judgment followed. (Dkt. 54). Afterward, Jones timely initiated the instant appeal. (Dkt. 55).

## STATEMENT OF FACTS

Deputy Ceinski declines to adopt Jones' statement of facts and, instead, submits the following statement of undisputed, material facts:

On August 8, 2020, at 11:20 p.m., Jones was driving a 1998 Mercury Marquis with a passenger, John Thomas ("Thomas"), in the front passenger seat. (Dkt. 1 at ¶ 7; Dkt. 41 at 7-10; Dkt. 42 at 5-6). Jones was driving north and stopped at a traffic light signaling red at Gateway Drive and Gulf Gate Boulevard. (Dkt. 42 at 6). While stopped at the light, the passenger door of Jones' car opened. (Dkt. 1 at ¶ 8; Dkt. 42 at 6).

As this occurs, Deputy Ceinski is on duty, parked in his Sheriff's vehicle with his parking lights on.[2] (Dkt. 42 at 5-6). Deputy Ceinski observed the passenger door on Jones' car open while the car was stopped at the traffic light, which Deputy Ceinski considered "odd." (Dkt. 42 at 6). As the light changed to green, Deputy Ceinski observed Jones' car turn left onto Gulf Gate Boulevard while the passenger's door remained open. (Dkt, 1 at ¶¶ 9-10; Dkt. 42 at 6-7). Deputy Ceinski activated his overhead lights and pursued Jones' car to perform a traffic stop because Jones operated his car with a door open in traffic. (Dkt. 1 at ¶ ¶12-13; Dkt. 42 at 7; Dkt. 41 at 9).

Jones then pulled into a restaurant parking lot, with Deputy Ceinski pulling his vehicle in behind Jones' car. (Dkt. 1 at ¶¶ 9; Dkt. 42 at 7). Deputy Ceinski called in the traffic stop as both vehicles pulled into the parking lot. (Dkt. 42 at 7-8). There are differing accounts of whether Jones exited his car voluntarily or when

---

[2] At the time of the incident, Ceinski had been a deputy with the Sarasota County Sheriff's Office since 2015. *See* Dkt. 48 at 7. Before joining the Sarasota County Sheriff's Office, Ceinski served as a United States Marine from 1981 to 1986, as a police officer in Pinellas Park, Florida from 1986 to 1992, as an agent for the United States Drug Enforcement Agency ("DEA") in Orlando, Florida from 1992 to 2000, and then in the same role at the United States Embassy in Bogota, Colombia from 2000 to 2006. *Id.* In 2009, Ceinski advanced to a supervisory role in the DEA in Arizona until 2012, after which he worked in Afghanistan for a year as a counter narcotics mentor for the United States Department of State, before returning to study for his re-certification from the Florida Department of Law Enforcement from 2013 to 2015. *Id.*

ordered to do so by Deputy Ceinski, but it is undisputed that Jones exited his car after parking it in the restaurant parking lot. (Dkt. 1 at ¶ 16; Dkt. 41 at 10-11; Dkt. 42 at 8). For purposes of the summary judgment motion, the facts in a light most favorable to Jones showed that Jones exited his car after being ordered to do so by Deputy Ceinski. (Dkt. 1 at ¶ 16; Dkt. 41 at 10-11) ("I got out of the vehicle when he told me to get out").

There are differing accounts of the events that occurred after Jones exited his car, but those accounts do align in certain respects. First, at some point during the encounter, Deputy Ceinski obtained Jones' license, registration, and concealed carry gun permit. (Dkt. 1 at ¶ 14; Dkt. 41 at 12-13; Dkt. 42 at 10-11, 15-17). These items were obtained before any physical contact between Deputy Ceinski and Jones. (Dkt. 41 at 11-13, 15; Dkt. 42 at 13-14). For purposes of the summary judgment motion, the facts in a light most favorable to Jones showed that he provided his license, registration, and concealed carry gun permit upon being asked to do so by Deputy Ceinski. (Dkt. 41 at 11-13). Additionally, Jones testified that there was a handgun in his car but did not disclose where the handgun was located. (Dkt. 41 at 11-12).

After Jones and Thomas were outside Jones' car, Deputy Ceinski observed a handgun in the front seat area of Jones' car. (Dkt. 41 at 13-15; Dkt. 42 at 12-13). Deputy Ceinski's observation of the handgun in Jones' car, with Jones near the car,

made Deputy Ceinski "fearful for [his] life." (Dkt. 42 at 18). Deputy Ceinski later secured the handgun and took it to his vehicle to review its information. (Dkt. 41 at 15). Additionally, as the traffic stop began but before Deputy Ceinski exited his vehicle and moved toward Jones' car, he radioed for backup to come to the scene. (Dkt. 42 at 15-16; Dkt. 45 at 3; Dkt. 44 at 4).

Next, it was only upon Deputy Ceinski observing the handgun in Jones' car, that he made physical contact with Jones. (Dkt. 41 at 15; Dkt. 42 at 13-14). There are differing accounts of how Deputy Ceinski made physical contact with Jones, but it is undisputed that he grabbed Jones from behind on or about the neck area. (Dkt. 41 at 15-16; Dkt. 42 at 13-15). According to Jones, Deputy Ceinski "grabbed" him and "put his arms around [Plaintiff's] neck," pulling him away from Jones' car. (Dkt. 1 at ¶19; Dkt. 41 at 15). Jones further characterized Deputy Ceinski's putting "his arms around [Jones'] neck" as having the effect of "choking" Jones. (Dkt. 41 at 16-18, 24). Jones further stated that Deputy Ceinski had him back "against the car" and he told Deputy Ceinski that he "couldn't breathe." (Dkt. 41 at 16-19).

Deputy Ceinski, whose statement as to the nature of his physical contact with Jones differs from Jones' statement, did nonetheless pull Jones away from Jones' car after making initial contact. (Dkt. 42 at 13-14). After pulling Jones away from his car, Deputy Ceinski then moved him up against the outside of the driver's

side of the car. (Dkt. 41 at 16-17; Dkt. 42 at 14-15). By the time backup arrived, Deputy Ceinski ceased his physical contact with Jones. (Dkt. 45 at 4-5; Dkt. 42 at 17; Dkt. 41 at 19-20).

The first backup deputy, Michael Celius ("Celius") arrived at the scene and upon arrival, observed Deputy Ceinski on the driver's side of Jones' car with Jones and Thomas standing outside of the passenger side of Jones' car. (Dkt. 45 at 4-5; Dkt. 42 at 17). Additional backup arrived thereafter, Deputy Jonathan Brusoe ("Brusoe") and then Lieutenant Michael Dumer ("Lt. Dumer"). (Dkt. 44 at 4; Dkt. 43 at 4-5; Dkt. 42 at 17). Brusoe and Celius described the incident scene upon their arrival as "chaos." (Dkt. 44 at 5, 9; Dkt. 45 at 8-9). Deputy Ceinski disengaged from Jones, and asked Brusoe and Celius to "deal with" Jones and Thomas. (Dkt. 42 at 21; Dkt. 41 at 19-20). Deputy Ceinski then proceeded to his vehicle to prepare a traffic citation. (Dkt. 42 at 20).

Lt. Dumer further investigated the incident scene, including speaking with Jones, Thomas, and potential witnesses, including some at a restaurant across the street from the incident scene. (Dkt. 43 at 9-11). One witness described to Lt. Dumer the events leading up to the traffic stop, including the passenger door of Jones' car opening as it moved along the road and the overhead lights on Deputy Ceinski's vehicle switching on. (Dkt. 43 at 10-11). As Lt. Dumer is assessing the incident scene and Deputy Ceinski is preparing the traffic citation that he would

issue to Jones, Deputy Ceinski hears over the radio that an ambulance had been called to the scene. (Dkt. 42 at 20; Dkt. 41 at 20, 22-23). Lt. Dumer directed that an ambulance be called to scene to make sure Jones received medical attention because Jones was complaining of "not feeling well." (Dkt. 43 at 13).

Charles Reynolds ("Reynolds") and Zachariah Barkema ("Barkema") of the Sarasota County Fire Department took the call for service at 11:30 p.m. and responded to the incident scene. (Dkt. 46 at 3; Dkt. 47 at 3). Reynolds spoke with Jones, who complained to Reynolds about neck pain. (Dkt. 46 at 3-4). Reynolds evaluated Jones at the scene and did not observe any visible injuries or bruising in the neck area. (Dkt. 46 at 4).

Reynolds further observed once he got Jones into the ambulance that Jones' hands "didn't work normally." (Dkt. 46 at 5). Before getting Jones into the ambulance, Reynolds did not notice anything wrong with Jones' hands. (Dkt. 46 at 5). Jones testified that he has osteoporosis in his hands but acknowledged that he did not tell Deputy Ceinski that he had a "handicap" related to his hands during the incident and Reynolds did not recall Jones telling him about his "handicap" before going to the hospital. (Dkt. 41 at 17-18; Dkt. 42 at 26; Dkt. 46 at 5-6).

Reynolds heard no other complaints from Jones of injuries to any other area of his body, including Jones' head. (Dkt. 46 at 7-8, 14) ("The only—the chief complaint was that he had was the neck pain"). For purposes of the summary

judgment motion, the facts in a light most favorable to Plaintiff showed that Jones stated that in addition to placing Jones in a choke hold, Deputy Ceinski also struck Jones once on top of his head with a closed fist and pulled Jones' arm behind his back during the encounter. (Dkt. 41 at 24-29). Plaintiff received medical treatment at Sarasota Memorial Hospital, including a wrap on one of his wrists, which Jones acknowledged was not broken during the encounter. (Dkt. 41 at 26-27).

## **STANDARD OF REVIEW**

The standard of review this Court applies to a district court's grant of summary judgment is *de novo*, applying the same legal standards that bound the district court. *E.g., Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1284 (11th Cir. 2014); Fed. R. Civ. P. 56. Accordingly, summary judgment is appropriate "where the evidence shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*

Under this standard, this Court reviews the evidence in the light most favorable to, and draws all *reasonable* inferences in favor of, the non-moving party. *Id.* However, the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. *E.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). Indeed, evidence that is merely colorable, or not significantly probative of a disputed fact, is

insufficient to create a genuine issue of material fact. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012). An issue of fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 247-248.

Further, in *de novo* review, this Court may reach the same conclusion as the District Court on questions of law but may do so for reasons independent of those cited by the District Court. *Peterson v. Atlanta Housing Authority*, 998 F.2d 904, 912 (11th Cir. 1993) ("The district court's conclusion of law is subject to complete and independent review by this Court").

## SUMMARY OF THE ARGUMENT

The District Court correctly granted summary judgment in favor of Deputy Ceinski. The District Court correctly granted summary judgment in favor of Deputy Ceinski because the undisputed, material facts demonstrated he was entitled to qualified immunity because there was no violation of Jones' constitutional rights.

Deputy Ceinski was indisputably a single officer waiting for backup during a nighttime traffic stop of two individuals where a firearm was observed in the front seat area of the stopped car. Those circumstances authorized Deputy Ceinski under established federal law to use limited manual force, a two arm hold around Jones'

neck, a single arm wrist lock, and a single strike to the top of Jones' head, which ended upon the arrival of backup.

Further, assuming *arguendo* an underlying violation could be shown, the Deputy Ceinski was nonetheless entitled to qualified immunity because the record shows he did not violate clearly established law.

Accordingly, this Court should affirm the judgment below.

## ARGUMENT

**THE DISTRICT COURT CORRECTLY ENTERED SUMMARY JUDGMENT IN FAVOR OF DEPUTY CEINSKI UNDER SECTION 1983 BASED ON QUALIFIED IMMUNITY BECAUSE THE UNDISPUTED FACTS DEMONSTRATED NO VIOLATION OF JONES' CONSTITUTIONAL RIGHTS AND NO VIOLATION OF CLEARLY ESTABLISHED LAW.**

The District Court correctly granted summary judgment in favor of Deputy Ceinski because the undisputed, material facts demonstrated he was entitled to qualified immunity because there was no violation of Jones' constitutional rights. (Dkt. 53 at 11-14). Further, assuming *arguendo* an underlying violation could be shown, Deputy Ceinski was nonetheless entitled to qualified immunity because he cannot be shown to have violated clearly established law. *Id*. at 14-16.

### A)    **Qualified Immunity Generally**

Under the qualified immunity doctrine, government officials performing functions under discretionary authority are immune not just from liability, but from

suit, unless the conduct that is the basis for suit violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

   To be protected by qualified immunity, a government official must first show he or she acted within his or her discretionary authority. *Penley v. Eslinger*, 605 F.3d 843, 849 (11th Cir. 2010). Once a government official makes that showing, *the burden then shifts to the plaintiff* to show the defendant is not entitled to qualified immunity. *Bates v. Harvey*, 518 F.3d 1233, 1242 (11th Cir. 2008).

   Under *Saucier v. Katz*, 533 U.S. 194 (2001), "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation."[3] *Hope v. Pelzer,* 536 U.S. 730, 736 (2002); *Saucier*, 533 U.S. at 201. If the allegations show the violation of a constitutional right, the next step is to ask, "whether the right was clearly established." *Id*.

   For a constitutional right to be clearly established, "its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing

---

[3] Federal courts are no longer bound to follow the "inflexible" two-part inquiry for qualified immunity established in *Saucier* but may use *Saucier* when "that order of decision-making will best facilitate the fair and efficient disposition of [the] case." *Pearson*, 555 U.S. at 236.

violates that right."[4] *Hope*, 536 U.S. at 739; *see also White v. Pauly*, 137 S. Ct. 548, 551-552 (2017). Indeed, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021), citing *District of Columbia v. Wesby*, 138 S. Ct. 577 (2018), quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

As will be shown, *infra*, Deputy Ceinski was entitled to qualified immunity as the District Court correctly determined.

### B) The District Court correctly determined that Deputy Ceinski did not use excessive force.

In the order below, the District Court correctly determined that Deputy Ceinski did not use excessive force against Jones during their encounter on August 8, 2020. (Dkt. 53 at 11-14). The District Court did so while viewing the undisputed, material facts in a light most favorable to Jones, presuming that Deputy Ceinski "placed a two arm hold around Mr. Jones' neck, implemented a one arm wrist lock, and struck the top of Mr. Jones' head." *Id*. at 11. The District Court also properly accounted for another undisputed fact—that Deputy Ceinski was conducting a traffic stop alone with the two occupants of the stopped car with a handgun visible within the car's interior. *Id*. at 12-13.

---

[4] In this Court, the question of whether the law is clearly established is determined by the decisions of the United States Supreme Court, the Eleventh Circuit, and the Florida Supreme Court at the time of the defendant's conduct. *E.g., Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1301 (11th Cir. 1998).

### 1) Excessive Force Standard under Federal Law

"*All* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S 386, 395 (1989) (emphasis supplied). This "reasonableness" must be judged from the perspective of an officer on the scene, rather than with the 20/20 vision of hindsight. *See Graham*, 490 U.S. at 396-397; *see also Mobley v. Palm Beach County Sheriff Dept.*, 783 F.3d 1347, 1353 (11th Cir. 2015) and *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009).

Courts must allow "for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving – about the amount of force that is necessary in a particular situation." *Troupe v. Sarasota County*, 419 F.3d 1160, 1168 (11th Cir. 2005). Thus, personal notions of proper police procedure must avoid being substituted for the "instantaneous decision of the officer at the scene," never allowing the "theoretical, sanitized world of our imagination to replace the dangerous and complex world" faced by law enforcement officers. *Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992); *see also Graham*, 490 U.S. at 396-397.

Notably, *Graham* requires excessive force claims to be examined under a standard that measures reasonableness "at the moment." *Graham*, 490 U.S. at 396.

*Graham* focuses the inquiry on the "split-second judgment" an officer is forced to make, and to assess the reasonableness of that judgment "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397; *see also Mobley*. Indeed, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."[5] *Cooks v. Kremler*, 2023 U.S. Dist. LEXIS 41333 at *13 (M.D. Fla. 2023), quoting *Graham*, 490 U.S. at 397.

*Graham* further instructs courts to look at "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect] is actively resisting arrest or attempting to evade arrest by flight." *E.g., Graham*, 490 U.S. at 396-397.

Using phrases like "at the moment," "split-second judgments" and "circumstances confronting them" reflect an understanding of the immediacy of the decision to use force. Thus, the reasonableness inquiry is limited to the

---

[5] Jones asserts in his sworn statement that Deputy Ceinski used several racial epithets during the subject encounter. (Jones at 18, 20). The sworn statements from Deputy Ceinski and the other witnesses cited herein dispute that any such language was used. (Ceinski at 27, 29; Dumer at 19; Brusoe at 16; Celius at 22; Reynolds at 10-11; Barkema at 6). While this constitutes a disputed fact, *Graham* instructs that an officer's intentions do not factor into the analysis of whether a use of force was objectively reasonable. *Graham*, 490 U.S. at 397. Thus, this disputed fact is not material to whether excessive force was used in this case. *Id*.

immediate, present-tense moment the decision to use force is made. *E.g., Graham*, 490 U.S. at 396; *see also Btesh v. City of Maitland*, 2011 U.S. Dist. LEXIS 83464 at *62 (M.D. Fla. 2011). This Court has also viewed this inquiry as requiring courts to ask if a reasonable officer would believe this level of force "necessary in the situation at hand." *Beshers v. Harrison*, 495 F.3d 1260, 1266 (11th Cir. 2007).

In conducting this inquiry, this Court has instructed federal courts to consider (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted. *See, e.g., Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002); *see also Pace v. City of Palmetto*, 489 F. Supp. 2d 1325, 1331 (M.D. Fla. 2007).

### 2)   No Excessive Force Used During Traffic Stop

As to the initial consideration, the need for the application of force, the undisputed facts demonstrate Deputy Ceinski used limited, manual, and reasonable force. Here, the use of manual force occurred incidental to a traffic stop. As the District Court aptly observed, "[t]raffic stops are 'especially fraught with danger to police officers,' but the risk of harm to both the police and vehicle occupants is minimized if 'the officers routinely exercise unquestioned command of the situation.'" (Dkt. 53 at 11), citing *Arizona v. Johnson*, 555 U.S. 323, 330 (2009), quoting *Michigan v. Long*, 463 U.S. 1032, 1047 (1983); *see also Maryland v.*

*Wilson* ("*Wilson*") 519 U.S. 408, 414 (1997) and *Presley v. State*, 227 So. 3d 95 (Fla. 2017).

Moreover, it is reasonable to expect that a law enforcement officer at the scene of a crime, arrest, or investigation "will not let people move around in ways that could jeopardize his safety." *E.g., Brendlin v. California*, 551 U.S. 249, 257-258 (2007). Thus, drivers and passengers may be asked to exit a vehicle during a traffic stop. *E.g., Pennsylvania v. Mimms*, 434 U.S. 106, 108-109 (1977) and *Wilson*, 519 U.S. at 410. Once outside of a car, drivers and passengers can be denied access to any possible weapon. *See Wilson*, 519 U.S. at 413-414.

Indeed, an individual near a car where a weapon could be accessed is considered an immediate threat to officer safety, thereby authorizing the use of force to prevent such access. *See Edwards v. Monmany*, 2023 U.S. Dist. LEXIS 4435 (M.D. Fla. Jan 10, 2023). In *Edwards*, an officer's use of a taser and two knee strikes to the back and head of an individual moving toward a vehicle where it was uncertain whether a weapon was present, was determined to be reasonable under the Fourth Amendment. *Id*. In this case, the presence of a weapon in the front seat area of Jones' car is undisputed, which authorized Deputy Ceinski, alone at a traffic stop waiting for backup to arrive with the two occupants of the car, to use some force to prevent access to the weapon.

The force used by Deputy Ceinski was indisputably manual force, Deputy Ceinski used no weapon to secure Jones and Deputy Ceinski did not take Jones to the ground. Presuming for purposes of the summary judgment motion that Deputy Ceinski used the force alleged by Jones, a two arm hold around his neck, a one arm wrist lock, and a single strike to the top of his head, all of that ended when backup arrived. Federal courts, including this Court, consider such measured uses of manual force as reasonable. *See Bolt v. Losa*, 2010 U.S. Dist. LEXIS 138832 *41-42 (S.D. Fla. 2010); *see also Moore v. Gwinnett County*, 967 F.2d 1495, 1498 (11th Cir. 1992), quoting *Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986). Consequently, the need for force is established where a single officer is preventing access to a car with a firearm inside while waiting for backup to arrive and the force used was reasonable as a matter of federal law.

The next consideration is the relationship between the need and amount of force used. As shown, *supra*, the measured use of manual force during a traffic stop where the possibility exists that a weapon could be accessed in the stopped car is considered reasonable under the Fourth Amendment. Federal law provides several illustrations of the use of measured manual force as reasonable while securing an individual.

In *Baxter v. Roberts*, 54 F.4th 1241 (11th Cir. 2022), video showing an arrest displayed a deputy grabbing a suspect's arm, forcing the suspect to the

ground, twisting the suspect's arm and "jerking it up," before placing the suspect in handcuffs. *See Baxter* at 1269. The Eleventh Circuit characterized the use of force as "commonplace" and "de minimis" force "that was permissible under the Fourth Amendment." *See Baxter* at 1269; *see also Myers v. Bowman*, 713 F.3d 1319, 1327-1328 (11th Cir. 2013) and *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002). Here, the undisputed facts show Deputy Ceinski's use of manual force for short duration to prevent access to a car with a handgun inside while waiting for backup to arrive represents a further example of "commonplace" force that this Court has considered appropriate and reasonable under such circumstances.

As to the final consideration, the extent of the injury inflicted, "[t]he Eleventh Circuit has repeatedly held that a push or shove that causes pain and necessitates no, or merely minor, medical treatment is not a constitutional violation, even where the [detainee] was restrained and no further force was necessary." *Perez v. Wicker*, 2016 U.S. Dist. LEXIS 84456 at *11-12 (M.D. Fla. 2016), citing *Jones v. City of Dothan*, 121 F.3d 1456, 1460-1461 (11th Cir. 1997) and *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556 (11th Cir. 1993), modified at 14 F.3d 583 (11th Cir. 1994).

Indeed, other federal courts have similarly concluded the absence of any sign of injury other than minor injury weighs against the conclusion that excessive force was used. *See Davis v. White*, 794 F.3d 1008, 1012 (8th Cir. 2015), citing

*Kingsley v. Hendrickson*, 576 U.S. 389, 397-401 (2015); *see also Thompson v. Bailey*, 309 F.R.D. 236, 247-248 (N.D. Miss. 2015) and *Renthrope v. Toffton*, 2007 U.S. Dist. LEXIS 101050 at *12-13 n.6 (W.D. La. 2007).

Here, the undisputed facts show no sign of injury other than minor injury. After being transported to the hospital, Jones was released with a wrap on one wrist and no other visible indicators of injury, i.e., cuts or bruises. The paramedics on scene received only complaints from Jones about his neck, where no visible injuries were evident. Indeed, Deputy Ceinski limited his use of force for the purpose of controlling Jones to prevent access to the firearm inside Jones' car resulted in an injury consistent with this limited use of manual force. Accordingly, the undisputed facts show no excessive use of force by Deputy Ceinski and thus, Deputy Ceinski was entitled to qualified immunity, which bars Jones' Section 1983 claim as a matter of law.

### 3)    Jones' Arguments Fail to Consider All Material Facts

In the Initial Brief, Jones wrongly argues that Deputy Ceinski used excessive force by focusing on certain facts, while sidestepping others. The central example of this consists of Jones' focus on his lack of resistance or attempt to flee from the subject traffic stop, while minimizing Deputy Ceinski's position as a single officer alone at a traffic stop at night with two individuals outside the car and a visible handgun inside the car. As shown, *see* pp. 15-17, *supra*, in the precise situation

presented to Deputy Ceinski at this traffic stop, federal law authorized him to take the steps he determined were necessary to ensure his safety (and the safety of others in the vicinity) by preventing, even through the use of force, access to the weapon. *See Arizona v. Johnson*, 555 U.S. at 330, *Wilson*, 519 U.S. at 413-414, *Brendlin*, 551 U.S. at 257-258, and *Edwards* at *9-11.

Moreover, Jones' criticism of the District Court's assessment of Deputy Ceinski's use of manual force and the nature of the Jones' injuries relies on assumptions not reflected in the undisputed facts below. For example, Jones' discussion of his injuries asserts that a reasonable jury could conclude he suffered more than minor injuries. *See* Initial Brief at 18-20. However, arguing that a wrist support for the vaguely described "*possible* wrist fracture" does not establish that a reasonable jury could conclude Deputy Ceinski caused an *actual* wrist fracture in the absence of medical evidence to demonstrate that fact.

### 4)    Conclusion of No Underlying Violation

Thus, the District Court, after considering the totality of the undisputed facts before it, and not relying on assumption or supposition, correctly concluded that Deputy Ceinski's limited use of force for the purpose of controlling Jones to prevent him access to the firearm inside Jones' car was objectively reasonable under the Fourth Amendment. Accordingly, the undisputed facts show no excessive use of force by Deputy Ceinski and thus, Deputy Ceinski is entitled to

qualified immunity, the entry of judgment in favor of the Deputy Ceinski was correct, and the judgment should be affirmed by this Court.

### C)    No Violation of Clearly Established Law

Assuming *arguendo* the undisputed facts could demonstrate a constitutional violation, qualified immunity nonetheless applies because Deputy Ceinski cannot be shown to have violated clearly established law. As shown, *supra*, the undisputed facts fail to demonstrate Deputy Ceinski personally caused a constitutional injury through using excessive force upon Jones. Consequently, even if Jones could show Deputy Ceinski personally caused a violation of his constitutional rights under the Fourth Amendment, Jones cannot show Deputy Ceinski violated clearly established law. Accordingly, Deputy Ceinski was entitled to summary judgment as to Jones' Section 1983 claim based on qualified immunity.

In the order below, the District Court correctly observed that Jones failed to cite case law "analogous to the facts here." *See* Dkt. 53 at 15. In the Initial Brief, Jones cites several cases for the principle that "even a single gratuitous use of force against an individual who is not resisting arrest violates the Fourth Amendment." *See* Initial Brief at 24. Jones cites several cases in support of this position, each of which describes the use of force against an individual who poses no threat and is no risk of flight. *See* Initial Brief at 24-27, citing *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002), *Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008), *Saunders v.*

*Duke*, 766 F.3d 1262 (11th Cir. 2014) and *Richmond v. Badia*, 47 F.4th 1172 (11th Cir. 2022).

However, none of the cases cited by Jones speaks to the specific facts of this case—a single law enforcement officer at a traffic stop, with two individuals outside the car and the visible presence of a firearm within the car. Jones' argument emphasizes facts that were either not known to Deputy Ceinski (Jones' disability) or facts that Deputy Ceinski was not safe to assume would persist (that neither occupant of the car would stop complying and try to access the handgun before backup arrived).

In contrast to Jones' limited view of the undisputed facts, the United States Supreme Court does not expect an officer in Deputy Ceinski to gamble with his or anyone else's safety from the handgun while waiting for additional officers to arrive. *See Brendlin*, 551 U.S. at 257-258, *Wilson*, 519 U.S. at 413-414 (officer allowed to deny access to weapon). The District Court, in cases like *Edwards* and this one, accurately applied these principles in authorizing the use of force to prevent access to a car with a weapon because it is an immediate threat to officer safety. *See Edwards* at *9-11.

Accordingly, because the undisputed facts show no violation of clearly established law by Deputy Ceinski, the entry of judgment in favor of the Deputy Ceinski was correct and should be affirmed by this Court.

# CONCLUSION

Wherefore, based upon the foregoing, the judgment below correctly granted summary judgment in favor of Deputy Ceinski. Accordingly, this Court should affirm the District Court's judgment.

Respectfully submitted,

Joshua B. Moye, County Attorney
Scott T. Bossard, Assistant County Attorney
Florida Bar No. 0038407
Attorney for Defendant/Appellee
Office of the County Attorney
1660 Ringling Boulevard, Second Floor
Sarasota, Florida 34236
Telephone: (941) 861-7272
Facsimile: (941) 861-7267
E-Mail: sbossard@scgov.net

BY: ___*s/Scott T. Bossard*___
        Scott T. Bossard
        Assistant County Attorney

## CERTIFICATE OF COMPLIANCE WITH RULE 32(g), FEDERAL RULES OF APPELLATE PROCEDURE

This brief was prepared using 14-point type (Times New Roman) and the word count is 7367.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been Electronically filed with the Clerk of Court using the EM/ECF System and sent this 29th day of February 2024 via electronic mail and first-class mail to: Appellant, c/o David W. Smith, Esq., 5020 Clark Road #412, Sarasota, FL 34233 and Arielle Humphries, Esq., NAACP Legal Defense & Educational Fund, Inc., 40 Rector Street, 5th Floor, New York, NY 10006; and to counsel for *amici curiae*, Adam Gershenson, Esq., Cooley LLP, 500 Boylston Street, 14th Floor, Boston, MA 02116-3736 and Daniel Tilley, Esq., American Civil Liberties Union Foundation of Florida, 4343 West Flagler Street, Suite 400, Miami, Florida 33134.

BY: ___*s/Scott T. Bossard*___
Scott T. Bossard
Assistant County Attorney